UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:02-CR-78-TAV-DCP |
| MICHAEL SMITH, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Defendant believes himself entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 1313]. The government waives the threshold question of exhaustion [Doc. 1320], permitting the Court to consider defendant's request on the merits. However, defendant's circumstances do not present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i). Accordingly, the Court will **DENY** defendant's motion.

**I.     Background**

On December 15, 2003, a jury convicted defendant of conspiring to distribute and possess with the intent to distribute fifty (50) grams of cocaine base (crack), in violation of 21 U.S.C. §§ 846 and 841(a)(1), and possessing and discharging a firearm during and in relation to a drug trafficking offense aided and abetted by another, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) [Docs. 623, 624, 781]. Defendant received a sentence of 412 months' imprisonment [Doc. 781]—which was subsequently lowered to 271 months [Doc. 1244]—which he is currently serving at FCI Danbury.

According to the Bureau of Prisons, as of July 20, 2020, FCI Danbury currently has no confirmed active COIVD-19 cases amongst the inmates and staff. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 20, 2020). One inmate has died from the disease, while ninety-one (91) inmates and sixty-one (61) staff members have recovered. *Id.*

Defendant is thirty-seven (37) years old and suffers from various medical conditions. According to a recent BOP medical report provided by the government, defendant currently suffers from essential hypertension, chronic pulmonary embolisms and thrombosis of vein, dermatitis, hyperlipidemia, obesity, type 2 diabetes, and abdominal pain [Doc. 1322]. This report and other medical records also indicate that defendant suffers from and/or has a history of asthma, glaucoma, anxiety, and coronary artery disease [*Id.*; Doc. 1319]. Defendant was hospitalized on several occasions in 2019, most recently in November, after experiencing chest pains related to his chronic pulmonary embolisms [Doc. 1322 p. 7–25].

On April 4, 2020, defendant sent a request for compassionate release to the warden of FCI Danbury, citing the risk to his health posed by the COVID-19 pandemic in light of his various medical conditions and his having completed more than seventy-five percent (75%) of his sentence as the basis for his request [Doc. 1320-1]. The warden, finding defendant's circumstances did not meet the criteria for compassionate release, denied defendant's request on May 1, 2020, twenty-seven (27) days after receipt of the request [Doc. 1320-2]. More specifically, the warden found that defendant had not shown "any

2

evidence [of] a debilitating medical condition" or "a decrease in [his] ability to manage [his] self-carry medication [or carry out] activities of daily living"; moreover, defendant was not "currently confined to a bed or chair for more than 50% of . . . waking hours" [*Id.*].

On May 12, thirty-eight (38) days after defendant's request to the warden, defendant filed the instant motion requesting that the Court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 1313].[1] The government has responded in opposition [Doc. 1320], and defendant replied [Doc. 1323]. The matter is now ripe for resolution.

## II.     Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018 amended § 3582(c)(1)(A) to modify one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on a motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. § 3582(c)(1)(A). If the defendant surmounts this

---

[1] The Court notes that defendant also filed medical records [Doc.1319] and a supplement to his motion [Doc. 1316].

preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.*

## III. Analysis

### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[2] which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

---

[2] The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

4

Defendant has not fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf. Defendant could have and did not appeal the warden's denial, 28 C.F.R. § 571.63(a), and only a determination by the General Counsel or the Director of the Bureau of Prisons constitutes a "final administrative decision" satisfying § 3582(c)(1)(A)'s requirement that defendant "fully exhaust[] all administrative rights to appeal." § 571.63(b)–(c); *see also* 18 U.S.C. § 3582(c)(1)(A). Accordingly, defendant has not fully exhausted his administrative rights.

That leaves only the thirty-day prong of the exhaustion requirement, which the government apparently concedes defendant has satisfied. The government states: "The Court has authority to consider Smith's motion because more than 30 days have passed since the warden of his facility received his request for a reduction of sentence" [Doc. 1320 p. 1]. But the Sixth Circuit rejected this interpretation of the thirty-day prong in *United States v. Alam*, 960 F.3d at 836. *Alam* clarified that satisfaction of this prong turns on the timing of the motions' filing, not whether the thirty-day window has "r[u]n its course" by the time a court considers a motion. *Id.* ("If (rather than dismissing) we sat on untimely compassionate release motions until the 30-day window ran its course, we could end up reviewing stale motions."). Nevertheless, defendant's motion was filed on May 12, 2020, thirty-eight (38) days after defendant's April 4th request to the warden. And although the warden responded to defendant's request within thirty (30) days of his receipt of the request, opening up an avenue for administrative appeal, under the interpretation of the exhaustion requirement seemingly adopted by the Sixth Circuit in *Alam*, it appears

5

defendant has satisfied the exhaustion requirement by waiting thirty (30) days before filing the instant motion. *Id.* at 834 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

But ultimately, in light of the government's waiver, the Court need not enforce the exhaustion requirement here. Because § 3582(c)(1)(A) is a non-jurisdictional provision, the government may waive enforcement of the exhaustion provision. Mandatory claim-processing rules are only mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Thus, because the government apparently concedes that defendant has satisfied the exhaustion requirement [Doc. 1320 p. 1], one of the exceptions to enforcing a mandatory claim-processing rules applies: the government has waived any objection to defendant's motion on exhaustion grounds. *See Alam*, 960 F.3d at 834 (citing *Cotton*, 535 U.S. at 630). The Court may therefore consider defendant's merits argument. *Cf. id.* (finding no waiver where the government "timely objected to Alam's failure to exhaust at every available opportunity").

      **B.**    **Whether Extraordinary and Compelling Reasons Justify Relief**

While the Court has authority to consider defendant's motion on the merits, defendant fails to establish extraordinary and compelling reasons warranting the requested sentence reduction. *See* § 3582(c)(1)(A)(i).

6

Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples. USSG § 1B1.13. Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." USSG § 1B1.13.

The application notes for § 1B1.13 provide additional guidance for applying the extraordinary-and-compelling-reasons prong of § 1B1.13's three-part test, describing four (4) categories of circumstances that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n.1. First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, or if defendant is suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13 cmt. n.1(A). Second, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging

7

process, and has served at least ten (10) years or seventy percent (70%) of the term of imprisonment. § 1B1.13 cmt. n.1(B). Third, certain family circumstances could provide reason to grant a sentence reduction. § 1B1.13 cmt. n.1(C). Fourth, the Director of the Bureau of Prisons could identify "other reasons" for relief, some "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 cmt. n.1(D).

Defendant appears to argue that since the passage of the First Step Act, § 1B1.13 no longer constrains the Court's consideration of a compassionate release motion [Doc. 1313 p. 8–10]. Rather, defendant seems to contend, courts may make an independent finding that extraordinary and compelling circumstances meriting relief exist, either by not applying § 1B1.13 or by stepping into the role of the BOP Director and applying subdivision (D)'s so-called "catchall" provision [*Id.*].

Courts disagree as to whether § 1B1.13 applies to motions by defendants under § 3582(c)(1)(A) because the policy statement refers only to motions by the Director of the Bureau of Prisons and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A). USSG § 1B1.13 historical n. (noting that the last amendment of this provision of the Guidelines was on November 1, 2018). Some district courts have held that the policy statement is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *see also United States v. Maumau*, No. 2:08-

8

Case 3:02-cr-00078-TAV-DCP Document 1330 Filed 07/24/20 Page 8 of 17 PageID #: 2174

cr-758, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020); *United States v. Cantu*, 423 F. Supp. 3d 345, 349–52 (S.D. Tex. 2019). While many others have interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *See, e.g.*, *United States v. Eberhart*, No. 13-cr-313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. York*, Nos. 3:11-CR-76; 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019); *United States v. McGraw*, No. 2:02-CR-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019); *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *1–2 (D.N.M. Apr. 3, 2019).

Courts have similarly disagreed as to whether courts can craft their own combination of "other [extraordinary and compelling] reasons" under subdivision (D). *Compare United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP."), *and United States v. Hickman*, No. 6:15-42, 2020 WL 2838544, at *2 (E.D. Ky. June 1, 2020) (finding that because the catchall provision provides that "other reasons" are to be "determined by the Director of the Bureau of Prisons," the Court has no authority to find "other reasons" beyond those listed in the policy statement), *with United States v. Young*, No. 2:00-cr-2-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (describing subdivision D's reference to the BOP Director as "a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act"), *and Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3–4 (E.D. Mich. Apr. 9, 2020) (finding that defendant presented "other reasons" for release where

9

69-year-old man suffered from a chronic lung disease, a serious heart condition, and liver disease, thus putting him at a high risk for contracting a severe case of COVID-19).

This Court has previously interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *United States v. Barnes*, No. 3:13-CR-117, 2020 WL 3791972, at *5 (E.D. Tenn. July 7, 2020). Additionally, the Court announced its agreement with the reasoning of those courts that have found that applying the policy statement, including subdivision D, to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary. *Id.*; *see also United States v. Nix*, No. 3:15-CR-36, Doc. 103 p. 12 (rejecting defendant's argument that "the legislative histories of § 3582(c) and the First Step Act support [an] expansive view of the court's authority to interpret 'extraordinary and compelling reasons' without reference to the policy statement"). This Court reasoned: "The First Step Act created a way for defendants to obtain expedited judicial review of a compassionate release request; it does not follow that it changed the nature of that review." *Barnes*, 2020 WL 3791972, at *5 (citations omitted); *see also Nix*, No. 3:15-CR-36, Doc. 103 p. 15 (concluding that continuing to apply the policy statement, including subdivision D as written, is not inconsistent with the First Step Act's ostensible purpose of increasing the use of compassionate release because "[t]he Act achieves this goal simply by granting defendants the ability to move for compassionate release on their own," and many defendants' motions "invoke the specific provisions of the policy statement rather than the catchall provision" (quoting *Hickman*, 2020 WL 2838544, at *2)).

10

Because any sentence reduction must be consistent with applicable policy statements, the fact that defendant's reasons do not fall into any of the four (4) categories of extraordinary and compelling circumstances justifies denying defendant's motion. § 3582(c)(1)(A)(ii).[3]

Defendant's first and principal argument is that COVID-19 poses a serious, possibly fatal, risk to him due to his various medical conditions, specifically his respiratory conditions [Doc. 1313 p. 10, 12]. But, as the government reasons, the COVID-19 pandemic does not fit into any of § 1B1.13's categories and thus does not provide a basis for a sentence reduction [Doc. 1320 p. 8]. The policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less a disease that "poses a threat to every person worldwide" [*Id.*]. *See* § 1B1.13 n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

On the other hand, as the government notes [Doc. 1320 p. 9], a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 cmt. n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for

---

[3] Defendant does not argue or present facts suggesting his age or family circumstances constitute extraordinary and compelling reasons, *see* § 1B1.13 cmt. n.1(B)–(C), and the Bureau of Prisons has not identified "other reasons" justifying defendant's release. *See* § 1B1.13 cmt. n.1(D). Accordingly, the only category of the four (4) set forth in § 1B1.13 cmt. n.1 that applies here is the medical condition of the defendant. *See* § 1B1.13 cmt. n.1(A). And within that category, only § 1B1.13 cmt. n.1(A)(ii) applies, because defendant has not alleged that he suffers from a terminal illness. *See* § 1B1.13 cmt. n.1(A)(i).

11

Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19. § 1B1.13 cmt. n.1(A)(ii)(I); *see also* People of Any Age with Underlying Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 20, 2020) (hereinafter "People with Underlying Conditions"). A court could find that defendant's medical condition is one "from which he or she is not expected to recover," i.e. a chronic condition, and is one, heightened by risks posed by COVID-19, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13 cmt. n.1(A)(ii).

Defendant's medical condition does not meet this standard. In support of his motion, defendant, who is age thirty-seven (37), points to his "diabetes, pulmonary embolisms, deep venous thromboembolism, coronary artery disease, glaucoma, asthma, sleep apnea, and high blood pressure" [Doc. 1313 p. 12]. While the majority of the defendant's medical conditions have not been identified by the CDC as heightening the risk of severe illness from COVID-19 infection, a few have, namely coronary artery disease, obesity, and type 2 diabetes. *See* People with Underlying Conditions. Additionally, moderate-to-severe asthma has been identified by the CDC as a condition which "might" put one at an increased risk for severe illness from COVID-19. *Id.* However, defendant has not alleged that these conditions are not being effectively managed by medication in line with CDC recommendations for reducing COVID-19-related risks. *Id.* Indeed, defendant's most recent medical report indicates that his prescriptions for

12

insulin, an inhaler, and various medications used in the treatment of coronary artery disease, were recently renewed or replaced with substitute medications [Doc. 1325 p. 4–6]. Moreover, despite some inconsistent use of insulin in the past, defendant reported substantial compliance with his medications during his most recent clinical encounter [*Id.* at 1–2], and he stated that he would "start [taking his insulin as prescribed] after this visit" [*Id.* at 1].

Furthermore, while defendant argues that being incarcerated heightens his risk of infection because of the difficulty of personal distancing and "generally unsanitary" conditions in "prison settings" [Doc. 1313 p. 11], he does not point to any specific, present conditions at FCI Danbury that increase his infection risk. Defendant does note a general concern that federal COVID-19 is "ravaging the prison system" [*Id.* at 12] and "prison medical facilities will be unable to cope with high levels of the virus within their walls" [*Id.* at 11], and with respect to his facility specifically, he does point to an opinion issued on May 12, 2020, in a civil case brought by four (4) inmates that he says "speaks to the critically dangerous conditions at FCI Danbury" [Doc. 1316 p. 1 (citing *Martinez-Brooks v. Easter*, No. 3:20-cv-569, 2020 WL 2405350 (D. Conn. May 12, 2020))]. While, this Court acknowledges that the district court in that civil case expressed legitimate concerns about FCI Danbury officials' response to the COVID-19 pandemic in May, *Martinez-Brooks*, 2020 WL 2405350, at *20–23 (concluding that the plaintiff-inmates of FCI Danbury had shown a likelihood of success on Eighth-Amendment claims based on conditions at the facility during a serious outbreak of COVID-19), it appears that the steps

13

subsequently taken by the BOP at FCI Danbury have, at least at the present time, been successful in halting the spread of the virus at the facility. Indeed, as of July 20, 2020, there are no active confirmed cases amongst the inmates and staff at defendant's facility. *See supra* p. 2. Thus, the Court finds that defendant has failed to establish that he suffers from a chronic medical condition whose danger to his health, in combination with a COVID-19 infection, rises to the level required under the policy statement, i.e. "substantially diminish[ing his ability] to provide self-care within the environment of a correctional facility."[4] § 1B1.13 cmt. n.1(A); *see also United States v. Shah*, No. 16-20457,

---

[4] Defendant cites several decisions in support of granting compassionate release based on medical conditions in combination with the COVID-19 threat [Doc. 1313 p. 13], but he cites only three (3) opinions by district courts within this circuit, and they are all distinguishable from defendant's case. Although the decision in *United States v. Walls* was rendered in the COVID-19 era and mentioned defendant's vulnerability to COVID-19 due to his age and medical condition, it did not rely on defendant's risk of infection; rather, it found extraordinary and compelling reasons for release under § 1B1.13 cmt. n.1(B) because defendant was seventy-eight (78) years old, had served over twenty-five (25) years in prison, and was suffering from "several serious health conditions, including Parkinson's, cardiovascular issues, and loss of ambulatory functions." No. 92-80236, 2020 WL 1952979, at *1–2 (E.D. Mich. Apr. 23, 2020). Defendant here has not alleged that he might qualify for compassionate release under subdivision B.

In *United States v. Coker*, the court found extraordinary and compelling reasons for release where defendant had "worsening, severe, and irreversible COPD" that the BOP admitted would cause "continued decline in her lung function which may ultimately lead to her death." No. 3:14-cr-85, 2020 WL 1877800, at *4 (E.D. Tenn. Apr. 15, 2020). Defendant in that case was also "essentially wheelchair bound" and "require[d] round-the-clock supplemental oxygen," while a recent bout of flu had "led to acute respiratory failure and long-term care facility placement because the BOP was 'unable to provide the high amount of oxygen needed.'" *Id.* Most importantly, the court found that "[w]ith or without consideration of the dangers of the current pandemic," defendant had satisfied the standard in § 1B1.13 cmt. n.1(A). *Id.* Defendant has not presented such stark evidence of incapacity to provide self-care in his facility, much less of a condition justifying compassionate release without the threat of COVID-19 infection.

In *United States v. Thorson*, the government did not oppose defendant's request for compassionate release where defendant suffered from rectal bleeding and his facility canceled his colonoscopy to determine the cause of the bleeding due to the pandemic. No. 5:16-cr-17, 2020 WL 1978385, at *1, 3 (W.D. Ky. Apr. 24, 2020). Moreover, defendant was set to be released to a

14

2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying motion for compassionate release where defendant was purportedly suffering from diabetes and hypertension but court found that "speculation as to whether COVID-19 will spread through Defendant's detention facility, FCI Morgantown, whether Defendant will contract COVID-19, and whether he will develop serious complications [did] not justify the extreme remedy of compassionate release" because defendant's medical conditions were "not out of the ordinary," defendant did not claim they were "fatal or untreatable," and there were no confirmed cases of COVID-19 at defendant's facility); *United States v. Phillips*, No. 12-

---

halfway house in less than three (3) months, and the court emphasized this factor in its decision, finding that "the proximity of Thorson's close release date and his underlying health conditions" offered compelling reasons to grant release. *Id.* Here, defendant's expected release date is in 2022, and he has not provided evidence of his facility's inability to provide him adequate care at the present time.

      The out-of-circuit district court opinions defendant cites are also distinguishable or provided minimal analysis, thus offering weak persuasive authority. *See, e.g.*, *United States v. Robinson*, No. 18-cr-597, 2020 WL1982872, at *2–3 (N.D. Cal. Apr. 27, 2020) (granting a renewed motion for compassionate release, which was previously denied, after "the coronavirus situation at [defendant's facility] ha[d] worsened" to the point of becoming "one of the most serious COVID-19 outbreaks in the nation" where defendant suffered from hypertension and "severe" psoriasis, which, while not a widely-recognized risk factor, required that defendant take immunosuppressant medications); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (finding that 48-year-old defendant with hypertension and prostate issues merited compassionate release given the challenges to social distancing at FCI Elkton, a "dorm-style" facility with 100 confirmed COVID-19 cases at that time); *United States v. Williams*, No. 3:17-cr-121-1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) (finding that it could make a determination of "extraordinary and compelling reasons" independent of the policy statement and thus not evaluating whether the medical conditions identified diminished the ability of defendant to provide self-care within the facility); *United States v. Park*, No. 16-cr-473, 2020 WL 1970603, at *3–4 (S.D.N.Y. Apr. 24, 2020) (granting compassionate release where defendant suffered from "severe asthma" in addition to "other health conditions," and this combination of conditions was "marked by poor immunological functioning and [could] manifest in life-threatening asthma attacks," and where the court's concern for defendant's health was "greatly exacerbated" by her incarceration at FCI Danbury where, at that time, there was a "documented" and "worsening" COVID-19 outbreak, with thirty-two (32) positive cases among staff and fifteen (15) among inmates (citations omitted)).

15

20372, 2020 WL 3071849, at *4 (E.D. Mich. June 10, 2020) (finding that "50-year-old man in fairly good health" with diabetes and hypertension "managed with prescription medications" did not present extraordinary and compelling reasons for release and noting that defendant's fear of contracting COVID-19 at FCI Loretto was speculative where there were no confirmed cases at the facility); *United States v. Gamble*, No. 3:18-cr-22-4, 2020 WL 1955338, at *4–5 (D. Conn. Apr. 23, 2020) (finding no extraordinary or compelling reasons where defendant suffering from diabetes did not claim or provide evidence that his diabetes was not being and could not be controlled by medication and where defendant had not demonstrated that BOP could not contain the spread of the virus at his facility or treat defendant if infected).

Even if the Court could recognize some combination of extraordinary and compelling reasons that fall outside those specified by the policy statement, which the text of the Guidelines does not currently authorize it to do, § 1B1.13 cmt. n.1(D), the reasons defendant cites are not extraordinary and compelling. While he suffers from chronic conditions that may increase his risk of serious infection, these conditions are apparently being managed with medication and have not advanced to a life-threatening stage. Additionally, defendant is only thirty-seven (37) years old and the remaining term of his sentence is not insignificant,[5] distinguishing his case from those where defendants were also at risk of infection due to their age and where defendants were set to be released in a

---

[5] According to the Bureau of Prisons, defendant is currently scheduled for release on September 22, 2022. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 20, 2020).

few days or months. Moreover, it appears that defendant's risk of infection at FCI Danbury does not appear, at the present time, to be significantly higher than it would be in the general population, and he has not shown that the BOP would be unable to treat him adequately if he were infected.

Because defendant does not present reasons for release that qualify as extraordinary and compelling under § 3582(c)(1)(A)(i), the Court does not need to consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" or whether "the reduction is [otherwise] consistent with this policy statement." USSG § 1B1.13.

## IV. Conclusion

Although the Court has authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) due to the government's waiver of the exhaustion requirement, it will deny the motion because defendant has not presented extraordinary and compelling reasons for release. Accordingly, defendant's motion for compassionate release [Doc. 1313] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE